IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATRINA S. FERGUSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-6419 |
| | : | |
| CITY OF PHILADELPHIA | : | |
| DEPARTMENT OF HUMAN | : | |
| SERVICES, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**BEETLESTONE, C.J.**                                                **May 4   , 2026**

In a prior Memorandum and Order, the Court dismissed Katrina S. Ferguson's Complaint alleging federal and state law claims arising from a child custody matter. *Ferguson v. City of Phila. Dept. of Human Servs.*, No. 25-6419, 2026 WL 195009 (E.D. Pa. Jan. 26, 2026) ("the January Memorandum"). Ferguson was granted leave to file an amended complaint if she was able to plead additional facts to cure the defects identified in her claims. Currently before the Court is Ferguson's Amended Complaint (ECF No. 8 ("Am. Compl.")), reasserting many of the claims set forth in her original Complaint. For the following reasons, Ferguson's state law negligence and Fourteenth Amendment procedural and substantive due process claims against Defendants Tyrie J. Sealy, Carl Tyndle and Aquila Lewis-Uqdah will be served for a responsive pleading. The balance of her Amended Complaint will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.      **FACTUAL ALLEGATIONS**[1]

---

[1] The facts are taken from the Amended Complaint (ECF No. 8). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

Ferguson asserts that she suffers from bipolar I disorder with anxiety.  (Am. Compl. ¶ 4.) She alleges the disorder impacts her ability to perform major life activities including bathing, hygiene, toileting, meal preparation, housekeeping, medication management, organization, concentrating, thinking, communicating, transportation, and walking.  (*Id*. ¶ 27.)  Ferguson receives 35 hours per week of home health aide assistance to complete these tasks.  (*Id*. ¶ 5.) Ferguson is the mother to a minor daughter, who is currently a student at Girard College, a boarding school in Philadelphia.  (*Id*. ¶¶ 3, 14.)  Ferguson alleges that on May 30, 2024, two caseworkers from the City of Philadelphia Department of Human Services ("DHS"), Defendants Tyrie J. Sealy and Carl Tyndle, removed Ferguson's daughter from Girard College and took her into custody without a court order or emergency justification, and without providing Ferguson notice or a pre-deprivation hearing.  (*Id*. ¶¶ 6, 7, 14, 15, 19.)  Unspecified Defendants "fabricated a false diagnosis of schizophrenia" which they used to justify the removal and subsequently "deny [Ferguson] access to DHS services and interfere with reunification efforts."  (*Id*. ¶¶ 17-18.)  It is unclear whether Ferguson has regained custody of her daughter.

Ferguson alleges that DHS Supervisor Aquila Lewis-Uqdah "approved the removal without reviewing medical records or confirming any emergency" and that DHS Supervisor Shanelle McCleary "ratified false documentation and failed to correct known inaccuracies."  (*Id*. ¶¶ 8-9.)  She asserts that DHS Administrator Vivian Smalls "approved continued custody interference and failed to provide [Ferguson] with required notices"; that DHS Commissioner Kimberly Ali "maintained policies allowing warrantless removals and failed to train staff on ADA [Americans with Disabilities Act] compliance"; and that DHS Chief of Staff Katherine Garzon "oversaw DHS operations and permitted the use of fabricated mental-health diagnoses." (*Id*. ¶¶ 10-12.)

2

Ferguson alleges the City of Philadelphia ("the City") "maintains a pattern, custom, and practice of removing children from parents without warrants, emergency justification, or notice." (*Id.* ¶ 21.)  She alleges this includes:

- Mislabeling parents with severe mental illness without reviewing medical records;
- Failing to contact treating providers before removal;
- Conducting removal without court orders;
- Denying pre-deprivation hearings; [and]
- Using false or exaggerated documentation to justify custody interference[.]

(*Id.*)  She also asserts that the City has failed to train DHS employees on due process and ADA compliance, including "[the need to] accommodat[e] parents with disabilities who require daily assistance."  (*Id.* ¶ 25.)  Ferguson alleges that as a result of losing custody of her daughter she was forced to pay $800 per month in child support and that she suffered emotional distress, financial harm, reputational damage, and interference with her parental rights.  (*Id.* ¶ 20.)

Ferguson asserts constitutional claims under the Fourteenth Amendment, Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims, and state law claims.  (*Id.* ¶¶ 23-30; *id.* at 4.)  See seeks compensatory and punitive damages, attorney's fees, and declaratory relief.  (*Id.* at 4-5.)

## II.    STANDARD OF REVIEW

Because the Court previously granted Ferguson leave to proceed *in forma pauperis*, her case remains subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B).  This requires the Court to screen and dismiss the Amended Complaint if it fails to state a claim.  The Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "At this early stage of the litigation, the

3

Court will accept the facts alleged in the pro se complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), ab*rogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* litigant liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244-45 (3d Cir. 2013)).  This requires the Court to remain flexible, especially considering a litigant's *pro se* status.  *Id.*  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245).  However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.    DISCUSSION

### A.    Federal Claims

#### 1.    ADA/RA Claims

Ferguson asserts claims against all Defendants under the ADA and RA, alleging discrimination based on her disability or perceived disability.[2]  (Am. Compl. ¶¶ 27-30.)  "Both [Title II of] the ADA and the RA require public entities . . . to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019).  "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath, construing the

---

[2] Where Ferguson alleges discrimination based on the false diagnosis of schizophrenia, the Court liberally construes her as asserting an ADA claim based on "perceived disability." *See* 42 U.S.C.A. § 12102(1), (3), (recognizing that an individual has a disability within the meaning of the ADA if she "[has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual" or is "regarded as having such an impairment.").

provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up). Although the substantive standards for determining liability under the Rehabilitation Act and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under § 504 of the Rehabilitation Act "must show that the allegedly discriminating entity receives federal funding," *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a).

To state a plausible claim under either the ADA or the RA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89 (footnote omitted). "To state a 'regarded as' disability claim, an individual must establish that he or she has been subjected to an action prohibited by the ADA because of an actual or *perceived* physical or mental impairment[,] whether or not the individual's impairment limits or is perceived to limit a major life activity.'" *Cappel v. Aston Twp. Fire Dep't*, 693 F. Supp. 3d 467, 490–91 (E.D. Pa. 2023) (citing § 12102(3)(A)) (cleaned up, emphasis added); *see also Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 246 (3d Cir. 2020) (quoting § 12102(3)(A)); *Matias v. Terrapin House, Inc.*, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021). The reason for "regarded as" claims, according to the Third Circuit, is that "being perceived as disabled 'may prove just as disabling' to a person as another type of physical or mental impairment." *Eshleman*, 961 F.3d at 246 (quoting *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 774 (3d Cir. 2004)). A plaintiff asserting an ADA discrimination

claim "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Furgess*, 933 F.3d at 289 (footnote omitted).  A plaintiff may meet that standard in two ways:  "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal quotation marks and alterations omitted).

Ferguson plausibly alleges that she is a qualified individual with a disability based on her bipolar I with anxiety diagnosis, which impacts several of her major life functions.  However, her RA claim is not plausible because she again fails to assert that she was excluded from any program or activity receiving federal financial assistance.  *See Dalton v. Saint Barnabas Med. Ctr.*, No. 21-5354, 2023 WL 7298464, at *7 (D.N.J. Nov. 6, 2023) ("Because the Amended Complaint does not allege that Centrella and Curato receive federal funds, Plaintiff's Rehabilitation Act claims against both are dismissed.").  Further, her ADA claims against the individual Defendants may not proceed because, as the Court previously advised her, such claims can only be asserted against a "public entity." *See January Memorandum*, 2026 WL 195009 at *5 (citing cases).

Turning to her ADA claims against the City, Ferguson must plausibly allege that she "was precluded from participating in a [DHS] program, service, or activity, or otherwise was subject to discrimination, by reason of [her] disability." *Furgess*, 933 F.3d at 288-89 (footnote omitted).  Additionally, "a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA." *Muhammad v. Ct. of Common Pleas of Allegheny Cnty.*, 483 F.

App'x 759, 763 (3d Cir. 2012) (*per curiam*).  To make out such a claim, a plaintiff must allege that the accommodation he seeks is reasonable, *i.e.* that it is "necessary to avoid discrimination on the basis of disability."  *Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775, 783 (7th Cir. 2002) (quoting 28 C.F.R. § 35.130(b)(7)).  Because Ferguson seeks compensatory damages for her claims, (*see* Am. Compl. at 5), she must allege intentional discrimination under a deliberate indifference standard, *Furgess*, 933 F.3d at 289.  She fails to do so.

Ferguson asserts that she was denied access to DHS programs and services based on her perceived disability.  She alleges that unspecified Defendants "used [the] fabricated diagnosis [of schizophrenia] to . . . deny [her] access to DHS services, and interfere with reunification efforts." (*Id*. ¶¶ 17-18.)  As in her original Complaint, Ferguson's allegations here are vague, failing to identify what "DHS services" she was denied or to specify how the Defendants "used" a fabricated schizophrenia diagnosis to deny her those services.  *See Iqbal*, 556 U.S. at 678 ("Rule 8 . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  Moreover, Ferguson does not allege a factual basis for liability against the City.  She neither asserts that the City was aware of a pattern in which its policies had resulted in ADA violations in the past, nor that the risk of staff doing so "was so great and so obvious" that the City should be deemed on notice of it.  *See Haberle*, 885 F.3d at 181-82 (affirming dismissal of ADA claims seeking compensatory damages against a municipality where plaintiff failed to allege facts indicating deliberate indifference by the municipal defendant) (internal quotation marks omitted).  Accordingly, Ferguson's ADA claim for compensatory damages against the City is not plausible.

Ferguson also appears to assert an ADA claim against the City based on a failure to accommodate.  Her factual allegations in support of this claim are sparse.  She alleges that unspecified staff failed to "accommodate [her] disability by ignoring her reliance on Home Health Aide services" and failed to "[p]rovide effective communication with [Ferguson's] medical providers to evaluate her functional capacity."  (Am. Compl. ¶ 29.)  At best, Ferguson's claim is undeveloped.  She fails to allege basic facts, including what accommodation she sought and why, when she sought the accommodation, and what reasons DHS staff gave for the denial. As a result, Ferguson fails to allege that the accommodations she requested were reasonable and were "necessary to avoid discrimination on the basis of disability."  *See Muhammad*, 483 F.App'x at 763; *see also Weiss v. Posner,* No. 24-9659, 2026 WL 674099, at *20 (D.N.J. Mar. 10, 2026) (dismissing Title II claim where, "aside from wholly conclusory statements that [two defendants] failed to provide Plaintiff with unspecified accommodations and services, Plaintiff fails to allege that he was denied such assistance on the basis of his disability").  Her failure to accommodate claim against the City is therefore not plausible and will be dismissed.[3]

### 2.      Fourteenth Amendment Due Process Claims

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

---

[3] Ferguson also asserts that the City "failed to train DHS staff on ADA compliance." (Am. Compl. ¶ 29.)  Whether Ferguson's allegations are construed as asserting a *Monell* claim or an ADA claim, she fails to allege a plausible underlying ADA violation, so the claim is not plausible.  *See Waller ex rel. Est. of Hunt v. Danville*, 556 F.3d 171, 177 n.3 (4th Cir. 2009) (declining to decide whether a failure to train claim could be brought under the ADA, noting that in any event "it is well-settled that the failure to train must have caused some violation of law for an action against a municipality to lie." (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989) and *Bates v. Chesterfield County,* 216 F.3d 367, 373 n.3 (4th Cir. 2000)).

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Township of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

Ferguson asserts both procedural and substantive due process claims against the individual Defendants.  (Am. Compl. ¶¶ 23-24.)  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To state a claim under § 1983 for a violation of her procedural due process rights, "a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

"[P]arents have a constitutionally cognizable liberty interest in the care, custody, and management of their children."  *Dennis v. DeJong*, 867 F. Supp. 2d 588, 623 (E.D. Pa. 2011).  But while "parents have a fundamental liberty interest in the custody of their children they do not always have a right to prior process when the state removes their children from their custody . . . in emergency circumstances which pose an immediate threat to the safety of a child, officials may temporarily deprive a parent of custody without parental consent or a court order."  *Patterson v. Armstrong Cnty. Child. & Youth Servs.*, 141 F. Supp. 2d 512, 530-31 (W.D. Pa. 2001) (citations and quotation marks omitted).

Substantive due process rights are those rights which are "fundamental" under the Constitution. *Nicholas v. Pa. State Univ.,* 227 F.3d 133, 139–141 (3d Cir. 2000). These include the "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Miller v. City of Philadelphia,* 174 F.3d 368, 374 (3d Cir. 1999) (quoting *Santosky v. Kramer,* 455 U.S. 745, 753 (1982)); *see also Anspach v. City of Philadelphia,* 503 F.3d 256, 261 (3d Cir. 2007). To support a substantive due process claim in the context of dependency proceedings, a child welfare worker's decision-making must be so clearly arbitrary that it shocks the conscience. *Miller*, 174 F.3d at 376.

Ferguson alleges a plausible procedural due process claim against Sealy, Tyndle, and Lewis-Uqdah, the DHS Defendants who were personally involved in removing and approving the removal of her daughter on May 30, 2024. Removing a minor from the parents' custody can be done without pre-deprivation notice if there is an imminent threat to the safety and wellbeing of the child. *See Hollingsworth v. Hill,* 110 F.3d 733, 739 (10th Cir. 1997); *see also Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 393 (4th Cir. 1990) ("Due process does not mandate a prior hearing where emergency action may be needed to protect a child."). For an emergency removal to be justified, the government must generally have "specific evidence of an imminent threat of severe neglect or physical abuse." *Egervary v. Young*, 159 F. Supp. 2d 132, 162 (E.D. Pa. 2001), *rev'd on other grounds*, 366 F.3d 238 (3d Cir. 2004). Here, Ferguson alleges that DHS did not provide any evidence of an imminent threat to her daughter to justify taking her into custody, but rather only cited false information that Ferguson was schizophrenic. (Am. Compl. ¶ 17.) She asserts that she received no pre-deprivation hearing or any meaningful opportunity to challenge the removal. (*Id*. ¶¶ 14-15, 19.) Accordingly, she states a plausible procedural due process claim against Defendants Sealy, Tyndle, and Lewis-Uqdah.

10

As to the remaining individual Defendants, however, her allegations do not state a plausible due process claim. Ferguson's allegation that Defendant McCleary "ratified false documentation and failed to correct known inaccuracies" is simply too vague and threadbare to allege her personal involvement. *See Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) ("Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." (cleaned up)). Similarly, as to Defendant Smalls, Ferguson's allegation that she "approved continued custody interference and failed to provide [her] with required notices," (Am. Compl. ¶ 10), is vague and does not put Smalls on notice of the wrongful conduct she is alleged to have engaged in, *Garrett*, 938 F.3d at 93. Her claims against Defendant Ali are based on allegations of unconstitutional policy and failure to train. For reasons discussed further below, Ferguson fails to allege a plausible *Monell* claim on those bases, thus her related claims against Defendant Ali are not plausible. As to Defendant Garzon, Ferguson's assertion that she "oversaw DHS operations and permitted the use of fabricated mental-health diagnoses" does not allege Garzon's personal knowledge of or involvement in Ferguson's custody matter, and rather appears based on Garzon's leadership role at DHS. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of*

11

*Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*).  Thus, the claims against Garzon are not plausible and will be dismissed.

The same factual allegations discussed above state a plausible substantive due process claim against Defendants Sealy, Tyndle, and Lewis-Uqdah only.  The Third Circuit has explained that "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Croft v. Westmoreland Cnty Child. and Youth Servs.,* 103 F.3d 1123, 1126 (3d Cir. 1997).  The information available to the government must create "an objectively reasonable suspicion of abuse justifying the degree of interference with the [parental] rights." *Id.*  Moreover, a child protection agency "must not be permitted to seek emergency protective custody of a child premised upon false or baseless information.  Even a swift response has to be grounded in fact to be legitimate." *Carlson v. Graziano*, No. 1675 MDA 2024, 2026 WL 362532, at *7 (Pa. Super. Ct. Feb. 6, 2026); *see also Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 241 (3d Cir. 2013) (holding that "a child welfare agency abridges an individual's substantive due process rights when its actions exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed shocks the conscience[, such as when] the child is removed without an objectively reasonable suspicion of abuse, based on the information available at the time" (cleaned up)).  Here, Ferguson alleges that the sole basis for DHS's actions was the false diagnosis of schizophrenia.  She alleges that they refused to call her medical providers and failed to verify their information.  Failure to conduct sufficient investigation into the purported basis for a child custody action violates the due process clause. *See Nicholson v. Williams,* 203 F. Supp. 2d 153,

12

237 (E.D.N.Y.2002) ("[T]he government must conduct sufficient investigation into the alleged neglect or abuse it relies upon to establish an objectively reasonable belief that the mother has neglected or abused her child." (citing *Gottlieb v. County of Orange,* 84 F.3d 511, 516 (2d Cir.1996))); *see also Strail v. Dept. of Child., Youth and Families of State of R.I.,* 62 F. Supp. 2d 519, 529 (D.R.I. 1999) ("[T]he due process clause will certainly be offended if children are taken away from their parents without sufficient investigation."). Read liberally, Ferguson asserts that Sealy, Tyndle, and Lewis-Uqdah were personally involved in the removal of her daughter without reasonable and articulable evidence that she was in imminent danger, and without conducting sufficient investigation into their purported basis for removal. Accordingly, her substantive due process claim against Sealy, Tyndle, and Lewis-Uqdah is plausible and will proceed to service.[4]

### 3.    *Monell* Claims

Ferguson asserts municipal liability claims against the City, alleging that she was harmed by the City's policies and its failure to train employees on due process and ADA compliance. To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal

---

[4] For the same reasons discussed with respect to Ferguson's procedural due process claim, her substantive due process claims against Defendants Smalls, Ali, and Garzon are not plausible.

quotation marks and citations omitted). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)) (internal quotation marks omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest*, 930 F.3d at 106. "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

As the United States Court of Appeals for the Third Circuit has stated,

> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that

14

"puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020).

Turning first to Ferguson's policy-based claims, she asserts that the City maintained a "pattern, custom, and practice of removing children from parents without warrants, emergency justification, or notice." (Am. Compl. ¶ 21.) She asserts that this included:

- Mislabeling parents with severe mental illness without reviewing medical records;
- Failing to contact treating providers before removal
- Conducting removal without court orders;
- Denying pre-deprivation hearings; [and]
- Using false or exaggerated documentation to justify custody interference[.]

(*Id.*) Ferguson does not allege that these practices were part of an official City policy, but rather a "pattern, custom, and practice." To allege that the City is liable under *Monell* for a custom, Ferguson must assert facts indicating that its course of conduct was "so well-settled and permanent as virtually to constitute law." *See Est. of Roman*, 914 F.3d at 798. She fails to do so. Ferguson does not provide any factual allegation indicating that DHS staff engaged in these practices in the past or that supervisors were on notice of the unlawful practices and failed to take any action to stop them. Rather, she appears to assert the existence of a custom based on one incident involving her daughter. A single incident is generally insufficient to plausibly allege a municipal custom. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (describing the need for a "pattern" of behavior to substantiate a custom theory); s*ee also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of

15

unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").  Because Ferguson does not allege facts indicating she was harmed by a pattern of unconstitutional behavior so well-settled as to constitute a City custom, her policy-based *Monell* claim is not plausible.

Her failure to train *Monell* claim is also not plausible.  She asserts that the City "fail[ed] to train DHS employees on due process" and "fail[ed] to train DHS employees on ADA compliance, including accommodating parents with disabilities who require daily assistance." (Am. Compl. ¶ 25.)  As noted above, Ferguson fails to plausibly allege a violation of the ADA. Without a plausible underlying ADA violation, her failure to train claim based on an ADA violation is not plausible.  *See Knellinger v. York St. Prop. Dev., LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014) ("[W]ithout an underlying constitutional violation, there can be no *Monell* claim" (citing *Customers Bank v. Municipality of Norristown,* 942 F.Supp.2d 534, 546 (E.D. Pa. 2013)).  As to her claims based on failure to train DHS staff in due process, Ferguson does not allege any facts indicating that supervisors or City officials were on notice of the need for different or better training of its staff, such as from past instances of due process violations.  *See Thomas,* 749 F.3d at 223 ("[A] pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train."). Without more than the conclusory allegation that her injuries were caused by a failure to train, Ferguson's *Monell* claims based on that theory are not plausible and will be dismissed.

### B.    State Law Claims

Ferguson also alleges several state law claims based on the actions of the DHS Defendants, including intentional infliction of emotional distress, negligence, defamation, abuse

16

of process, and interference with custody rights.  For reasons discussed below, she alleges a plausible negligence claim, but the remaining state law claims are not plausible and will be dismissed.

### 1.    Intentional Infliction of Emotional Distress

"To establish an IIED claim under Pennsylvania law, a plaintiff must [allege] that (1) the defendant's conduct was extreme or outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the plaintiff's distress is severe." *Doe v. The Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 826-27 (E.D. Pa. 2017).  The defendant' s conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'" *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (quoting Restatement (Second) of Torts § 46 cmt. d)).  In addition, a plaintiff must allege that he or she "suffer[ed] some type of resulting physical harm due to the defendant's outrageous conduct," which must be supported by competent medical evidence.  *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz,* 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)); *see also Fewell v. Besner*, 664 A.2d 577, 582 (1995) ("A plaintiff must also show physical injury or harm in order to sustain a cause of action for intentional infliction of emotional distress.").

Ferguson alleges that her minor daughter was taken into DHS custody without a pre-deprivation hearing, based largely on a false diagnosis of schizophrenia.  Ferguson asserts that as a result of the Defendants' actions, she "suffered emotional distress." (Am. Compl. ¶ 20.)  She does not, however, allege any facts indicating that her emotional distress was severe or that she suffered a physical impact, as required to plead an IIED claim.  *See Doe*, 270 F. Supp. 3d at 827; *Fewell*, 774 A.2d at 582.  Her IIED claim is therefore not plausible and will be dismissed.

17

### 2.    Defamation

Ferguson also asserts a defamation cause of action.  Under Pennsylvania law, a claim for defamation includes the following elements:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.

*Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (citing *Tucker v. Fischbein,* 237 F.3d 275, 281 (3d Cir. 2001)).  A statement is defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  *Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 442 A.2d 213, 282 (1981)) (quoting *Birl v. Phila. Elec. Co*., 402 Pa. 297, 167 A.2d 472, 476 (1960) (internal quotation marks omitted)).  "But the statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'"  *Graboff*, 774 F.3d at 136 (quoting *Tucker v. Phila. Daily News*, 577 Pa. 598, 848 A.2d 113, 124 (2004)).

Read liberally, Ferguson alleges that the individual DHS Defendants defamed her by stating in unspecified "false mental-health documentation" that she has been diagnosed with schizophrenia.  (Am. Compl. ¶¶ 6-9.)  Even assuming the statements were defamatory, Ferguson does not allege that they were published, nor to whom they were published.[5]  Because Ferguson fails to allege these elements, her defamation claim is not plausible and will be dismissed.

---

[5] To the extent the allegedly defamatory statements were made in court documents, the statements are protected by the litigation privilege.  *See Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015) ("Pennsylvania, like many other jurisdictions, recognizes a judicial [litigation] privilege providing immunity for communications which are made in the regular course of

18

### 3.    Abuse of Process

Ferguson also asserts a claim for abuse of process, presumably based on the DHS Defendants using the dependency process to take custody of her daughter.  In Pennsylvania, to assert an abuse of process claim a plaintiff must allege that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Credico v. Hubiak*, No. 3306 EDA 2016, 2017 WL 1505246, at *5 (Pa. Super. Ct. Apr. 21, 2017).  Ferguson alleges that she was harmed by the DHS Defendants taking custody of her daughter and that they did so based on false information that they failed to verify.  She does not allege, however, that the Defendants did so with a purpose other than to protect her daughter from suspected harm.  Without facts suggesting that the Defendants' use of the dependency process was to accomplish an improper purpose, Ferguson fails to allege a claim for abuse of process and the claim will be dismissed.

### 4.    Interference with Custody Rights

Ferguson asserts a claim for "interference with custody rights."  There is no such civil cause of action in Pennsylvania.  To the extent Ferguson seeks to impose criminal liability for the offense of "interference with custody of children" under 18 Pa. C.S. § 2904(a), that statute

---

judicial proceedings and are material to the relief sought.").  "[T]he privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." *Id*. at 947 (citing *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004)).  The judicial privilege is not limited to statements made in open court, but encompasses pleadings as well. *Post v. Mendel*, 507 A.2d 351, 353 (Pa. 1986); *see also Stein v. City of Philadelphia*, 2013 WL 6408384, at *6 (E.D. Pa. Dec. 5, 2013) ("Parties in litigation are given an absolute privilege with regard to statements that relate to a judicial proceeding if the communications are preliminary to, instituting, or part of the proceeding.")

19

contains no citizen suit provision and can only be prosecuted by a district attorney's office.[6]

Accordingly, any such claim is dismissed with prejudice.

### 5.    Negligence

Finally, Ferguson asserts a negligence claim.  In Pennsylvania, to assert a negligence

claim the plaintiff must allege four elements:

> (1) a duty or obligation recognized by the law, requiring the actor
> to conform to a certain standard of conduct for the protection of
> others against unreasonable risks; (2) a failure to conform to the
> standard required; (3) a causal connection between the conduct and
> the resulting injury; and (4) actual loss or damage resulting in harm
> to the interests of another.

*Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005).  While Ferguson does not

articulate the basis for her negligence claim, read liberally, she asserts a plausible claim based on

the removal of her minor daughter using incorrect and unverified mental health information.  As

noted above, government officials like the individual Defendants have a duty to conduct

adequate investigation before taking custody of a minor.  *See Nicholson,* 203 F. Supp. 2d at

237 ("[T]he government must conduct sufficient investigation into the alleged neglect or abuse it

relies upon to establish an objectively reasonable belief that the mother has neglected or abused

her child.")  Here, Ferguson alleges that they failed to do so, relying instead on false information

and refusing to review her medical documentation. As a result, the Defendants caused Ferguson

financial and emotional injury.  Accepting all inferences in Ferguson's favor, she plausibly

---

[6] Courts are "reluctant to infer a private right of action from a criminal prohibition alone," especially where the criminal statute is "bare" as to private enforcement.  *Miller v. Nelling,* No. 22-3329, 2023 WL 2743564, at *3 (E.D. Pa. Mar. 31, 2023) (quoting *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994).  Further, "the Third Circuit has repeatedly held that criminal statutes generally do not create private rights of action."  *Id*. (collecting cases).

alleges a negligence claim against Defendants Sealy, Tyndle, and Lewis-Uqdah which will be served for a responsive pleading.

## IV.   CONCLUSION

For the foregoing reasons, the Court will permit Ferguson to proceed on her state law negligence and Fourteenth Amendment procedural and substantive due process claims against Defendants Sealy, Tyndle, Lewis-Uqdah.  Ferguson's Title II ADA claims against the individual Defendants and her state law interference with custody rights claims are dismissed with prejudice.  The remaining claims are dismissed without prejudice.  An appropriate Order follows, which directs service of the claims against Defendants Sealy, Tyndle, and Lewis-Uqdah.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**

21